1  Joshua D. Gruenberg (163281)
   josh@gruenberglaw.com
2  Joshua P. Pang (296371)
   jp@gruenberglaw.com
3  Pamela Vallero (308301)
   pam@gruenberglaw.com
4  **GRUENBERG LAW**
   2155 FIRST AVENUE
5  SAN DIEGO, CALIFORNIA 92101-3542
   TELEPHONE: (619) 230-1234
6  TELECOPIER: (619) 230-1074

7  Attorneys for Plaintiff,
   **FRANK VALLI**

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10 | FRANK D. VALLI, an individual,         | Case No.: **'21 CV 1390 DMS BGS**
11 |                                        |
   |              Plaintiff,                | **COMPLAINT**
12 |     v.                                 |
13 |                                        | **Civil Rights - Employment**
   | ALEJANDRO N. MAYORKAS,                 | **Discrimination & Retaliation**
14 | Secretary of the Department of         |
15 | Homeland Security                      | **DEMAND FOR JURY TRIAL**
16 |              Defendant.                |

17

18      COMES NOW, Plaintiff FRANK D. VALLI ("Plaintiff" or "VALLI"), by and

19 through his counsel of record, Gruenberg Law, and upon information and belief and

20 demanding a trial by jury, for his Complaint against ALEJANDRO N. MAYORKAS,

21 in his official capacity as Secretary of the Department of Homeland Security, states as

22 follows:

                                   **I.**

23                          **NATURE OF ACTION**

24      Plaintiff brings this lawsuit under Title I and Title V of the Americans with

25 Disabilities Act ("ADA") for claims of discrimination and retaliation on the basis of

26 Plaintiff's known disability.

27      Plaintiff suffers from a physical disability. Plaintiff has a fifteen percent

28

permanent disability in his shoulder as a result of a workplace injury discussed further herein. Plaintiff alleges that Defendant has systematically acted with the purpose and effect of denying Plaintiff the same environment, terms, and conditions of employment as others similarly situated because of his disability. Specifically, Defendant subjected Plaintiff to adverse employment actions such as, but not limited to, a forced transfer, denial of benefits and performance awards, refusal to accommodate disability, retaliation for reasonable accommodation requests, pervasive harassment and humiliation, a hostile work environment, intentional interference with Plaintiff's job duties, and unjustified threats of punitive action threats of physical assault, among other adverse employment actions stated hereafter.

## II.

## PARTIES

1.     Plaintiff, FRANK D. VALLI is, and at all times herein mentioned was, a resident of the County of San Diego in the State of California and this judicial district.

2.     Defendant, ALEJANDRO N. MAYORKAS, is the Secretary of the Department of Homeland Security. CBP is a department within, and answerable to, the U.S. Department of Homeland Security (DHS). The DHS is part of the executive branch of the United States government.

## III.

## JURISDICTION

3.     Plaintiff    FRANK    D.    VALLI    alleges    claims    for employment discrimination under the ADA. The ADA is a federal statute. A sub-section of the ADA, 42 U.S.C. § 12117, expressly provides that the jurisdictional statute set forth in 42 U.S.C. § 2000e-5(f)(3) applies to an action brought under the ADA. 42 U.S.C. § 2000e-5(f)(3) grants the United States District Court for the Southern District of California original jurisdiction over FRANK D. VALLI's ADA claims pursuant to 28 U.S.C. § 1331 because Defendant engaged in

1  alleged disability discrimination in this judicial district.

2       4.     Plaintiff FRANK D. VALLI alleges claims for retaliation in violation of

3  the ADA, which is a federal statute. The ADA provides that the jurisdictional statute

4  set forth in 42 U.S.C. § 2000e-5(f)(3) applies to actions brought under the ADA and

5  grants the United States District Court for the Southern District of California with

6  original jurisdiction over Plaintiff's claims under the ADA pursuant to 28 U.S.C. §

7  1331 because: (i) Defendant engaged in alleged unlawful retaliation in this judicial

8  district.

9  **IV.**

10  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11       5.     Plaintiff is entitled to file this civil action because more than 180 days

12  have elapsed since Plaintiff timely filed his formal complaint with the Equal

13  Employment Opportunity Commission (EEOC). *See* 29 C.F.R. §1914.407.

14  **V.**

15  **FACTUAL ALLEGATIONS**

16  **A.**    **Facts Common to All Claims**

17       6.     On or around January 5, 2004, Plaintiff began working for Defendant.

18  Plaintiff has devoted his career to the U.S. Customs and Border Protection (CBP).

19       7.     From the beginning of his employment until approximately January

20  2008, Plaintiff was employed as a U.S. Border and Patrol Agent for CBP.

21       8.     From about January 2008 through approximately October 2011, Plaintiff

22  served as a CBP Marine Interdiction Agent (MIA). In or around October 2011,

23  Plaintiff moved to a supervisory role (SMIA). In or around September 2015, Plaintiff

24  was assigned to the San Diego Air and Marine Branch ("SDAMB"). Throughout

25  Plaintiff's tenure at SDAMB, Hunter N. Davis ("Davis") served as Director of

26  Operations, Timothy J. Sutherland ("Sutherland") served as Deputy Director Air

27  Operations, Jeremy R. Thompson ("Thompson") served as Deputy Director Marine

28  Operations, Christopher D. Hunter ("Hunter") served as Deputy Assistant Director

1  Marine Operations, and Reif A. Smith ("Smith") served as a Supervisory Marine

2  Interdiction Agent. Thompson was Plaintiff's first level supervisor throughout his

3  tenure at SDAMB.

4       9.    On or around March 1, 2016, Plaintiff suffered a serious work-related

5  injury to his right shoulder that resulted in a Level III separation of the AC joint,

6  rotator cuff damage, and an associated bicep tendon injury ("2016 Injury"). The

7  injury required surgery, continued rehabilitation, and continued care of his

8  Orthopedic Surgeon Michael R. Lenihan, M.D. Plaintiff received a 15% permanent

9  disability rating as a result.

10      10.    Plaintiff is an individual with a disability in that:

11          a. Plaintiff has a physical impairment that the defendants regarded as

12             substantially limiting his major life activities of movement; working;

13             social relationships; caring for himself; driving; sleeping; and/or

14          b. Plaintiff has a record of a physical impairment that substantially limits

15             his major life activity of movement; working; social relationships; caring

16             for himself; driving; and sleeping.

17      11.    Plaintiff's injury claim was accepted by Bonnie Lee, Claims Examiner

18  for the Department of Labor on or about April 4, 2016.

19      12.    Plaintiff is a qualified individual with a disability in that he can perform

20  all of the essential functions of the position of SMIA with or without reasonable

21  accommodations. Plaintiff was placed on light duty as a reasonable accommodation

22  in response to his restrictions. Light duty consisted of administrative and supervisory

23  functions.

24      13.    On November 25, 2016, Plaintiff was attacked in his work parking lot by

25  a highly intoxicated individual trying to escape a crime scene that saw Plaintiff going

26  to the office in uniform. The attack took Plaintiff to the ground; he struggled trying to

27  get the subject into handcuffs as he had limited mobility in his shoulder and arm.

28  Plaintiff was able to subdue the subject and turned him over to San Diego Police

1  Department. This caused more damage to Plaintiff's shoulder. Plaintiff, Thompson
2  and Plaintiff's physician agreed that Plaintiff should not be in uniform.

3      14.    Since his 2016 Injury, Plaintiff has been subject to constant harassment,
4  discrimination, hostile work environment, and retaliation.

5      15.    Plaintiff has consistently performed his employment obligations in a
6  competent and diligent manner. Plaintiff has been able to perform, without incident,
7  all the necessary supervisory duties associated with his position.

8      16.    For the entire duration of Plaintiff's employment, he has never been
9  received to any workplace performance or disciplinary issues in any manner
10  whatsoever. Rather, Plaintiff has earned exceptional performance reviews and
11  performance-based awards. Over the last five years, in all of his performance
12  reviews, Plaintiff has exceeded expectations or achieved excellence.

13      17.    Since Plaintiff's 2016 Injury, CBP supervisors and management level
14  employees have discriminated against Plaintiff in the terms, conditions, and
15  privileges of his employment on a regular basis.  Specifically, as a result of Plaintiff's
16  disability, DHS supervisors and management level employees repeatedly undermined
17  Plaintiff's ability to conduct his job duties competently.

18      18.    On or about March 4, 2018, Hunter called Plaintiff into Thompson's
19  office. Hunter informed Plaintiff he would not be attending the Firearms Instructor
20  Recertification that had been approved months in advance. Additionally, Plaintiff's
21  training coincided with Hunter's own time-off request. Plaintiff and Hunter were not
22  allowed to be out at the same time. As a result of Plaintiff's persistence, he was
23  ultimately approved to attend the class despite Hunter and Thompson's initial denial.

24      19.    Plaintiff was confused and told Thompson, "You approved this for me
25  months ago. I have already purchased the plane ticket and made reservations."
26  Thompson yelled, "I will make the decision because I am the one that makes the
27  decisions around here."  Plaintiff was supposed to leave on Sunday and Thompson
28  never said anything after the exchange. Plaintiff just went. Hunter was attempting to

1  take away Plaintiff's collateral duties by preventing him from obtaining the requisite

2  training.

3      20.    This was not the only time Plaintiff was denied attendance of training

4  programs that he qualified for due to his disability. As a collateral duty, Plaintiff had

5  been an EMT since 2005. To maintain this certification, Plaintiff had to recertify each

6  two years. For example, Hunter denied Plaintiff's attendance of both an EMT training

7  course to maintain you have to recertify and attend training – Plaintiff was forced to

8  pay out of pocket [500usd] instead of going to training paid by the agency. Plaintiff

9  was one of two EMTs at the SD Marine Unit. Plaintiff had saved hundreds of

10 individuals out in the field. Additionally, there had been multiple migrant drowning

11 incidents in the SD Marine Unit's area of responsibility.

12     21.    In or about September 2018, Thompson and Hunter required Plaintiff to

13 stay after a supervisor meeting to discuss his work trajectory. Specifically, Thompson

14 and Hunter told Plaintiff they were moving him from the midnight shift to the day

15 shift. They explicitly cited Plaintiff's disability as support for the change. Moving

16 him from the midnight shift significantly reduced his monthly pay because he would

17 no longer be earning premium pay such as night differential pay and Sunday pay. It

18 would also unnecessarily erode his sick leave he would have to use for his required

19 medical and physical therapy appointments.

20     22.    In or about November 2018, and continuing on a regular basis thereafter,

21 Hunter intentionally sowed discontent for Plaintiff by his subordinates. Despite

22 Plaintiff providing excellent recommendations for his subordinates, Hunter and

23 Thompson stated it was Plaintiff's fault that such subordinates did not receive

24 performance awards.

25     23.    On or about February 15, 2019, Hunter demanded Plaintiff resume

26 wearing his uniform to work despite Plaintiff's Orthopedist's explicit medical

27 direction to wear plain clothes while on the job. This was one of initial work

28 restrictions Plaintiff's Orthopedist implemented, which Hunter was aware, following

Plaintiff's 2016 Injury. In fact, Plaintiff had been in plain clothes since his 2016 Injury. The reason Plaintiff's Orthopedist restricted Plaintiff to plain clothes because he exacerbated his shoulder injury in an altercation with a perpetrator. On November 25, 2016, a perpetrator attempting to flee the scene of a crime attacked Plaintiff. The perpetrator saw Plaintiff in uniform and immediately attacked him as a result. Unfortunately, Plaintiff suffered additional damage to the same shoulder damaged in Plaintiff's 2016 Injury. Thereafter, Thompson and Plaintiff's Orthopedist agreed Plaintiff should work in plain clothes, in the interest of Plaintiff's health and safety, to prevent similar incidents. Despite Plaintiff's Orthopedist's written restrictions and Thompson's approval, Hunter remained adamant that Plaintiff wear his uniform to work.

24.    On or around May 22, 2019, Plaintiff sent the EEO counselor an email regarding his verbal request for reasonable accommodation. Plaintiff complained, "*I go in and out of the office into the field several times a night during my shift. It is extremely painful for me to remove my shirt and takes more than usual time for me to do so. If I had to do this several times a night, it would definitely cause undue hardship and unnecessary pain for me. I was told by both Christopher Hunter and Jeremy Thompson that I am a supervisor and have to set a proper example to our personnel. In the past, wearing a uniform was never an issue, and now all of a sudden, they are telling me I am setting a bad example to our personnel because I have been wearing plain clothes while on modified duty,*" or words to that effect.

25.    On or about June 17, 2019, Plaintiff learned that his required fiscal year 2019 mid-year performance review had not been completed because Hunter and Thompson never initiated Plaintiff's fiscal year 2019 Performance Plan ("Performance Plan") in the first place. Hunter and Thompson, contrary to standard CBP procedure, intentionally failed to provide Plaintiff's mandatory final performance review for the 2019 Fiscal Year until February 5, 2020. CBP policy requires the submission of a final performance review by no later than October 30 of

1   the fiscal year (2019). As a result of both Air and Marine director's intentional and

2   unreasonable delay, Plaintiff was unable to apply for at least nine different

3   promotions and was not eligible for performance awards as other employees were.

4          26.    On or about February 26, 2019, Plaintiff was in plain clothes like he had

5   been since he had been attacked. As a result, Hunter threatened to report Plaintiff to

6   Labor and Employment Relations (LER) if he did not wear his uniform. In response,

7   Plaintiff provided Hunter his most recent medical documentation, which listed the

8   restriction: "plain clothes only – no uniform." In response, Hunter threatened Plaintiff

9   "we will go nine rounds. We will go nine rounds and you will lose," or words to that

10  effect. Referencing physical violence.  As a result of Hunter aggressive behavior,

11  Plaintiff requested Hunter provide him, in writing, how Hunter will store Plaintiff's

12  medical documentation and who will have access to it. Despite explicit CBP

13  procedures requiring medical documents to be locked up and only viewed by

14  essential personnel, Hunter responded, "Oh no! That's not how this works! You work

15  for me!" Rather, Hunter failed to reassure Plaintiff that he would handle his medical

16  documents consistent with DHS and CBP policy and procedures and HIPAA

17  requirements. Plaintiff left the office not knowing what he was going to do and not

18  being able to complete his work that day.

19         27.    That same day, Plaintiff was told to write a memo as to why he was not

20  in uniform and that Hunter and Thompson were going to refer him to Labor

21  Employee Relations to start the process. Thompson once again threatened him with a

22  Fit-For-Duty exam on this date.

23         28.    On at least three separate occasions, Thompson and Hunter discussed

24  their intention to move Plaintiff to another shift and replace him with a different

25  supervisor because of Plaintiff's disability.

26         29.    For example, on or about February 28, 2019 Thompson told Plaintiff he

27  had been on light duty too long and demanded Plaintiff provide an exact date of his

28  return to full duty or Plaintiff would be subject to a Fitness for Duty Evaluation.

1  However, CBP Policies provide that there is not set minimum or maximum duration
2  for an agent to remain on light-duty. Rather, the treating physician of the employee
3  requesting light-duty determines the necessary duration of light-duty assignment. In
4  fact, on three separate occasions, Thompson threatened to send Plaintiff to a Fitness
5  for Duty Evaluation while Plaintiff was still on light duty, a medical treatment plan,
6  and while Plaintiff was still under the care of his Orthopedist.

7        30.    Additionally, on or about February 28, 2019, Plaintiff learned that
8  Hunter and Thompson had previously instructed Mission Support Specialist Melissa
9  Walkup ("Walkup") to initiate a search for light duty positions within the San Diego
10  Area of Responsibility ("AOR"). Hunter and Thompson also instructed Walkup to
11  contact Plaintiff's nurse care manager concerning his medical information in an effort
12  to move Plaintiff to another position. Such invasion of privacy constitutes a HIPAA
13  violation. No one's medical has ever been questioned except for Plaintiff's. Hunter
14  was getting Plaintiff's medical information and putting in on a public shared drive.

15        31.    However, the discriminatory conduct of CBP supervisors extended
16  beyond their attempts to move Plaintiff out. On or about February 28, 2019,
17  Thompson withheld Plaintiff's Federal Government Fifteen Year Service Award,
18  already a year late, despite Plaintiff's repeated requests. On the same day, Thompson
19  told Plaintiff that he would not approve his tuition reimbursement until the uniform
20  issue stated herein was resolved.[1] There are only a few reasons why employees are
21  not given this reimbursement—his personal subjective reasons were not sufficient.
22  Plaintiff was insistent on the fact that he had a right to it.

23        32.    On or about April 4, 2019, Thompson assigned Plaintiff a punitive
24  memo and threatened disciplinary action against Plaintiff for failing to timely submit
25  a specific memorandum regarding his complaint against Hunter. However, Thompson
26  did not provide sufficient time to get his memorandum submitted and ultimately
27  required him to submit this memorandum of complaint on his day off. Thomson had

28

_____

[1] This CBP tuition reimbursement program (TAP) is available to all CBP employees.

COMPLAINT

1    multiple opportunities to speak with Plaintiff in person but rather ensured Plaintiff

2    was unable to timely submit his memorandum. Plaintiff originally provided a memo

3    for Thompson on or about February 28, 2019. However, Thompson required more

4    from Plaintiff until any investigation would be initiated on his behalf. Plaintiff

5    repeatedly requested Thompson get LER involved, as it was his job to do so.

6        33.    On or about May 2, 2019, Plaintiff initiated proceedings for filing an

7    informal EEO complaint for discrimination.

8        34.    On June 6, 2019, the OPR finally interviewed both Hunter and

9    Thompson regarding Plaintiff's February 2019 complaints.

10       35.    The next day, on June 7, 2019, Defendant removed Plaintiff from his

11   position as supervisor at the Marine Unit, which Plaintiff had worked in for three

12   years while recovering from the 2016 Injury without incident. In retaliation for

13   Plaintiff's complaints for harassment and discrimination, Defendant removed

14   Plaintiff from his supervisory role, reassigned his direct reports, discharged his

15   collateral duties, and ordered Plaintiff to transfer to the Air Branch. The only changed

16   circumstances were the filing of Plaintiff's EEO Complaint and Plaintiff's submission

17   of the CBP OPR reports. In fact, Plaintiff was progressing back to full duty as his

18   restrictions had been reduced over the three years since the 2016 Injury.

19       36.    On or about June 12, 2019, the employees at CBP held a "send-off" for

20   Thompson, who was relocated to Washington State. During this meeting, Thompson

21   initiated a physical altercation with Plaintiff's direct report. When the direct report

22   asked Thompson when Plaintiff was coming back to the Marine Unit, Thompson

23   aggressively yelled, "Fuck Frank. Frank Valli Fucked Me," or words to that effect, in

24   front of journeymen and other supervisory agents. This event had been announced on

25   government email. There were many coworkers present. Thompson's intent was to

26   spread falsehoods about Plaintiff and to harm to Plaintiff's professional reputation.

27       37.    On or about June 27, 2019, Plaintiff lodged a formal complaint with

28   Sutherland regarding Thompson's conduct at the "send-off."

38.     On or about June 27, 2019, Davis and Sutherland issued a temporary light duty assignment transfer for Plaintiff. However, Plaintiff was forced to turn down the transfer as it was not in compliance with Plaintiff's Orthopedist ordered work restrictions, the stated job duties were vague, and the light duty transfer did not indicate Plaintiff's prospective work hours. On or about July 17, 2019, The Department of Labor OWCP confirmed in writing that this proposed transfer was noncompliant and illegal. In response, on or about June 29, 2019, Sutherland and Davis ordered and coerced Plaintiff to use sick leave and remain off work until Plaintiff's scheduled June 29, 2019, follow up exam with his Orthopedist. This outrageous request was made in direct response to Plaintiff's refusal to sign a Light Duty Agreement that was not true or correct.

39.     On or about June 29, 2019, Davis and Sutherland asked Plaintiff to sign a light duty agreement. Plaintiff refused because it did not have all of the restrictions provided by the Orthopedist. Davis told Plaintiff they were not going to change it. In response, Plaintiff again requested the reasonable accommodation to wear plain clothes. Rather than suffer the hostility of his direct supervisors (Hunter and Thompson), Plaintiff made this request to Davis and Sutherland. Plaintiff notified Davis and Sutherland that he was retaliated against for requesting such accommodation. In response, Davis yelled at Plaintiff, "You have no right to use reasonable accommodations," or words to that effect.

40.     On or about July 2, 2019, Plaintiff received notice of right to file a formal EEO Complaint for discrimination.

41.     On or about July 17, 2019, Hunter sent a department-wide email acknowledging the real threat against CBP officers as a result of public calls to sabotage Immigration and Customs Enforcement (ICE) and CBP efforts in light of surmounting tension over border control. As a result, Defendant was on notice of the heightened danger presented for personnel in identifying uniforms. This is precisely why Plaintiff's Orthopedist directed Plaintiff to work in plain clothes until off light

1    duty.

2       42.     On or about July 24, 2019, Plaintiff filed his formal EEO Complaint for

3    discrimination, harassment, and retaliation.

4       43.     On or about August 20, 2019, Plaintiff notified David and Sutherland

5    that he was approved to begin the trial period transitioning him back to full duty in

6    lieu of Plaintiff's September 16, 2019 meeting with his Orthopedist. Plaintiff

7    requested he return to full duty on August 25, 2019, in his original capacity as a

8    supervisory CBP Marine Interdiction Agent.

9       44.     Instead, on or about August 23, 2019, Sutherland notified Plaintiff he

10    would be returning to full duty with the North Island Air Branch; the branch Plaintiff

11    was transferred to in retaliation for opposing the discriminatory practices alleged

12    herein.

13                                           **VI.**

14                     **STATEMENT OF CLAIMS**

15                     **FIRST CAUSE OF ACTION**

16     **DISCRIMINATION ON BASIS OF DISABILITY IN EMPLOYMENT**

17               **(42 U.S.C. § 12112(a), (b)(5))**

18       45.     Plaintiff re-alleges and incorporates by reference each and every

19    allegation contained in the preceding paragraphs as though fully set forth herein.

20       46.     Defendant is a covered employer under the ADA. Plaintiff is a covered

21    employee. During Plaintiff's employment with Defendant, he has been an individual

22    with a disability. Plaintiff's disability limited one or more of his major life activities

23    (working, among others). Defendant was aware of Plaintiff's disability because he

24    had previously disclosed the disability to Defendant's managers. Plaintiff also

25    explicitly requested accommodations for his disability. Defendant transferred

26    Plaintiff after he requested an accommodation for his disability. At no point did

27    Defendant suggest alternative accommodations that it might provide to Plaintiff or

28    engage in any other conduct that would constitute engagement in a good faith

COMPLAINT

1  interactive process. Thus, Defendant failed to engage in a timely, good faith,

2  interactive process to accommodate Plaintiff's disability and failed to make

3  accommodations for his (request to wear plain clothing, to take one example).

4  Defendant also engaged in disability discrimination. Plaintiff was harmed by

5  Defendant's failure to engage in an interactive process, failure to make

6  accommodations and engage in disability discrimination. He has lost income and will

7  continue to lose income—which may or may not be subject to partial or complete

8  mitigation—for many years in the future. He has also experienced stress, anxiety and

9  worry in his personal life, which continues to this day.

10                               **SECOND CAUSE OF ACTION**

11                                     **RETALIATION**

12                                  **(42 U.S.C. §12203(a))**

13        47.    Plaintiff re-alleges and incorporates by reference each and every

14  allegation contained in the preceding paragraphs as though fully set forth herein.

15        48.    Plaintiff was at all times material hereto an employee covered by the

16  Americans with Disabilities Act ("ADA"), which prohibit retaliation in employment

17  on the basis of complaints made against unlawful discriminatory, harassing, or

18  retaliatory treatment.

19        49.    Since at least approximately 2016 and thereafter and continuing to and

20  after August 2019, when Plaintiff was denied the transfer back to his position as a

21  CBP Supervisory Marine Interdiction Agent, Defendant has engaged in unlawful

22  employment practices in violation of the ADA, by taking adverse employment

23  actions, including but not limited to demoting Plaintiff, keeping him from completing

24  trainings, changing Plaintiff's shifts, in unlawful retaliation for his having exercised

25  his right to request reasonable accommodation, and/or because he filed a charge of

26  discrimination with the Commission and participated in the investigation and

27  proceedings of the Commission and other investigative entities.

28        50.    Frequently from 2016 up until 2019, when Defendant received

1 | Plaintiff's charge of discrimination, Defendant threatened to transfer and in fact did
2 | transfer Plaintiff out of his supervisory role. On or about July 24, 2019, Plaintiff filed
3 | a charge of discrimination with the Commission alleging, *inter alia,* that he was
4 | threatened with demotion for requesting an accommodation. At all relevant times
5 | Plaintiff performed the duties of his position properly, yet Defendant demoted him
6 | for his having exercised his right to request reasonable accommodation, and/or
7 | because he filed a charge of discrimination with the Commission and participated in
8 | the investigation and proceedings of the Commission.

9 | 51.    The effect of the actions complained of in paragraphs 51 and 52 above
10 | has been to deprive Plaintiff of equal employment opportunities and otherwise
11 | adversely affect his status as an employee because of his disability.

12 | 52.    The unlawful employment practices complained of in paragraphs 51 and
13 | 52 above were intentional.

14 | 53.    The unlawful employment practices complained of in paragraphs 51 and
15 | 52 above were done with malice or with reckless indifference to the federally
16 | protected rights of Plaintiff.

## PRAYER FOR RELIEF

18 | **WHEREFORE**, Plaintiff prays for the following relief:

19 | 1.    ***On Plaintiff's First Claim For Relief***: (a) economic damages for Plaintiff's
20 | lost wages (back pay, front pay, other lost compensation and benefits), according to
21 | proof but in an amount that exceeds $50,000 and that may continue to accrue; (b)
22 | non-economic damages in an amount according to proof, but up to the statutory cap
23 | of $300,000 under ADA; and (c) reasonable attorney's fees, costs of suit and expert
24 | witness fees under 42 U.S.C. § 2000e-5.

25 | **2.**    ***On Plaintiff's Second Claim For Relief***: (a) economic damages for the lost
26 | wages (back pay, front pay, other lost compensation and benefits) of Plaintiff's
27 | according to proof but in an amount that exceeds $100,000 and that may continue to
28 | accrue; (b) non-economic damages, according to proof, but up to the statutory cap of

COMPLAINT

1  $300,000 under the ADA; and (c) reasonable attorney's fees and costs of suit

2  under 42 U.S.C. § 2000e–5.

3  **PLAINTIFF FRANK VALLI** demands a jury trial on all issues in this case.

4

5  DATED: August 2, 2021           **GRUENBERG LAW**

6                                                   */s/ Joshua Gruenberg*

7                                                   JOSHUA D. GRUENBERG
                                                    JOSHUA P. PANG
8                                                   PAMELA VALLERO

9                                                   Attorneys for Plaintiff,
                                                    **FRANK VALLI**
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT